Andrew C. Kassner, Esq.
Pa. Attorney I.D. No. 43567
Andrew J. Flame, Esq.
Pa. Attorney I.D. No. 69673
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
(215) 988-2700
Attorneys for Plaintiff, Textron Financial Corporation



**FILED**
**SCRANTON**

OCT 2 1 2011

Per_____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEXTRON FINANCIAL CORPORATION,<br>40 Westminster Street<br>Providence, RI 02903,<br><br>    Plaintiff,<br><br>  v.<br><br><br>VACATION CHARTERS, LTD.<br>One Lake Drive, Box 592<br>Lake Harmony, PA 18624,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br><br>NO. 11-<br><br>**3: CV  11  1957** |

## COMPLAINT IN CONFESSION OF JUDGMENT

Textron Financial Corporation ("Textron" or "Plaintiff"), through its undersigned

counsel, states as its Complaint in Confession of Judgment against Vacation Charters, Ltd.

("Defendant", and together with Plaintiff, the "Parties"), as follows:

## I.    **INTRODUCTION**

1.    Textron commences the instant action to collect upon certain of its loans to Defendant, which loans are evidenced by promissory notes, loan agreements, security agreements and mortgages as more fully set forth below, and a Forbearance Agreement (as defined below) between the Parties. Defendant has defaulted under the loan documents, the loans have been accelerated, the loan indebtedness is due and owing in full, and Defendant has authorized entry of a confessed judgment against it.

## II.    **PARTIES AND JURISDICTION**

2.    Plaintiff Textron Financial Corporation is a Delaware Corporation with a principal place of business at 40 Westminster Street, Providence, Rhode Island 02903.

3.    Defendant Vacation Charters, Ltd. is a Pennsylvania Corporation with its principal place of business at One Lake Drive, Box 592, Lake Harmony, Pennsylvania 18624.

4.    The last known addresses for Plaintiff and Defendant, respectively, are as set forth above.

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 dollars exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

## III.    **VENUE**

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because (a) Defendant resides in and is subject to personal jurisdiction in this judicial district, and (b) a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

**IV      FACTUAL BACKGROUND AND DEMAND FOR ENTRY OF JUDGMENT**

7.      Defendant owns and operates a resort, time share property, water park and related facilities in Lake Harmony, Pennsylvania (the "Resort Complex").

***Plaintiff's Loans to Defendant***

8.      Plaintiff has made advances (each an "Advance" and, collectively, the "Advances") to Defendant (collectively, the "Loans") pursuant to (i) that certain Acquisition and Receivables Loan Agreement dated June 21, 1999; (ii) that certain Inventory and Receivables Loan Agreement dated September 6, 2001; (iii) that certain Receivables Loan Agreement dated January 15, 2003; (iv) that certain Amended, Restated and Consolidated Receivables Loan Agreement dated November 19, 2007; (v) that certain Construction Loan Agreement dated December 17, 2007; (vi) that certain Second Amended, Restated and Consolidated Receivables Loan Agreement, dated May 2, 2011 (the "Receivables Loan Agreement"); (vii) that certain First Amended and Restated Inventory Loan Agreement, dated May 2, 2011 (the "Inventory Loan Agreement" and, collectively with the Receivables Loan Agreement and all documents executed in connection with such agreements, each as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement"); and (viii) any and all security agreements, guaranty agreements, subordination agreements, intercreditor agreements, deposit account control agreements, notes, mortgages, pledges, instruments and any other agreements and documents delivered pursuant to or in connection with or related to in any way to any of the foregoing (items (i) through (vii), as amended, restated, supplemented or otherwise modified from time to time, the "TFC Financing Documents").

9.      True and correct copies of the Receivables Loan Agreement and the Inventory Loan Agreement are attached hereto as Exhibit "A" and Exhibit "B", respectively, and are

3

incorporated herein by reference. All amounts due and owing pursuant to the TFC Financing Documents, including, without limitation, all Advances, interest and cost of collection, including attorneys' fees, are collectively referred to herein as the "Indebtedness". TFC Financing Documents attached hereto as Exhibits do not include Exhibits and Schedules, which are voluminous and not material to the allegations herein.

10.    On or about May 2, 2011, at the time of execution of the Credit Agreement and to further evidence the Indebtedness, Defendant executed, as maker, in favor of Plaintiff, (a) that certain Second Amended, Restated and Consolidated Receivables Loan Note (Tranche A) in the original principal amount of $31,000,000 (the "Tranche A Note" and indebtedness related thereto, the "Tranche A Loan"), (b) that certain Receivables Loan Note (Tranche B) in the original principal sum of $7,000,000 (the "Tranche B Note" and indebtedness related thereto, the "Tranche B Loan"), and (c) that certain Amended and Restated Inventory Loan Note in the original principal sum of $4,000,000 (the "Inventory Note", and indebtedness related thereto, the "Inventory Loan"; the Inventory Note, Tranche A Note and Tranche B Note are collectively referred to herein as, the "Promissory Notes"). True and correct copies of the Tranche A Note, Tranche B Note and Inventory Note are attached as Exhibit "C", Exhibit "D", and Exhibit "E", respectively, and are incorporated herein by reference.

11.    Pursuant to the TFC Financing Documents, including, without limitation, the Receivables Loan Agreement and the Inventory Loan Agreement, Defendant and W. Jack Kalins ("Guarantor"), jointly and severally, agreed to pay Plaintiff's costs related to the TFC Financing Documents and the Loans, including, without limitation, all costs and expenses related to claims by Plaintiff and enforcement of rights and remedies. See Receivables Loan Agreement at § 23.5; Inventory Loan Agreement at § 17.5.

4

***Defendant's Events of Default Under the TFC Financing Documents***

12.      On April 29, 2011 in the action captioned <u>Albert Whitehead & Austin Miller-Orteneau, on behalf of themselves and others similarly situated v. Vacation Charters, Ltd., W. Jack Kalins, Inc. & W. Jack Kalins</u>, the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, Civil Trial Division (the "<u>Philadelphia Court</u>"), August Term 2008, No. 3764 (the "<u>Class Action</u>") entered an Order and Findings of Fact (collectively, the "<u>Class Action Order</u>") against Defendant and others.  A true and correct copy of the Class Action Order is attached hereto as <u>Exhibit "F"</u> and incorporated herein by reference .

13.      The Class Action Order provides, among other things, that certain judgments aggregating in excess of $2,000,000.00, plus interest and attorneys fees, were to be entered against the Defendant and others, jointly and severally, in the Class Action.

14.      Defendant advised Plaintiff that (a) Defendant would be unable to either pay the amounts owed under the Order or obtain the required bond to secure a stay of execution once judgment was entered against Defendant, and (b) Defendant had engaged bankruptcy counsel and intended to file a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code.

15.      On May 16, 2011, Plaintiff issued a notice (the "<u>Default Notice</u>") in accordance with the TFC Financing Documents, which, among other things, informed Defendant, that as a result of entry of the Class Action Order and imminent entry of judgment in the Class Action and Defendant having engaged counsel with the intent to commence a voluntary bankruptcy proceeding, that there was a significant risk that (a) the plaintiffs in the Class Action may then or shortly thereafter take action to collect the amounts owed under the Class Action Order (as amended, modified or further reduced to judgment), including causing writs of execution,

5

attachments and levies to be filed, issued and/or made against the TFC Collateral and other assets of Defendant and/or Guarantor, guarantor of the Indebtedness, (b) Defendant's interests in real property would, in the immediate future, be subject to judgment liens related to or arising from the Class Action, and (c) Defendant's ability to continue to conduct business, including without limitation the on-going sale of timeshare interests at the Resort Complex, was and/or would be materially impaired.

16.     As set forth in the Default Notice, as a result of the above-referenced events, (i) Plaintiff determined, in good faith, that a material adverse change in the financial condition of Defendant and Guarantor had occurred, (ii) Events of Default have occurred under Sections 22.1(g) and (m) of the Receivables Loan Agreement, and Sections 16.1(g) and (m) of Inventory Loan Agreement and under the other TFC Financing Documents (collectively, the "Noticed Defaults"), (iii) all obligations of Defendant, including the Indebtedness, became  immediately due and payable in full without further action by Plaintiff, and (iv) Defendant was no longer entitled to advances under the TFC Financing Documents.  A true and correct copy of the Default Notice is attached hereto as Exhibit "G" and incorporated herein by reference.

17.     By Order entered May 18, 2011 in the Class Action, the Philadelphia Court entered judgment in favor of plaintiffs and against, among others, the Defendant and Guarantor, jointly and severally in the Class Action consistent with the Class Action Order previously entered.

18.     By Order entered May 31, 2011 in the Class Action, the Philadelphia Court ordered, among others, Defendant and Guarantor, jointly and severally, to pay attorneys' fees and costs to counsel for the plaintiffs in the Class Action in an amount in excess of $777,000.00.

19.     As of August 2, 2011, additional Events of Default (the "Additional Events of Default" and, together with the Noticed Events of Default, the "Events of Default") had occurred under the TFC Financing Documents, including, without limitation, the Promissory Notes, as a result of, among other things:

(a)     The occurrence of an event of default under the Defendant's Forbearance Agreement with TD BankNorth, N.A. ("TD Bank") (see Receivables Loan Agreement at § 22.1 (gg); Inventory Loan Agreement at §16.1(cc));

(b)     Defendant's failure to comply with the restrictions under the Credit Agreement on the use of maintenance fees (collectively, the "Maintenance Fees") for the Resort Complex by using and/or disbursing from Maintenance Fee accounts (collectively, the "Maintenance Fee Accounts") controlled by the Defendant (a) the sum of $150,000.00 to Defendant's counsel, Fox Rothschild LLP, as a retainer for pre- and anticipated post-bankruptcy legal services for Defendant, and (b) the sum of $345,000.00 to Fox Rothschild LLP to fund a portion of an anticipated settlement ("Class Action Settlement") of the Class Action (see Receivables Loan Agreement at § 9.13; Inventory Loan Agreement at § 8.12);

(c)     Defendant's failure to deposit not less than $45,327.00 (the "Monthly Tax Reserve Payment") into a tax reserve account on or before July 10, 2011 as required by the TFC Financing Documents (see Inventory Loan Agreement at § 8.25(c)(i));

(d)     Defendant's failure to enter into an escrow agreement with Plaintiff and Homestead Land Services, as escrow agent, on or before May 15, 2011 (see Inventory Loan Agreement at § 8.25(b)(iii));

7

(e)     Defendant's inability to pay its debts as they become due or having admitted in writing its inability to pay its debts as they mature (see Receivables Loan Agreement at § 22.1(g); Inventory Loan Agreement at § 16.1(g)); and

(f)     Defendant's failure to provide Plaintiff by the tenth day of June 2011 and the tenth day of July 2011, monthly reports setting forth all information in connection with the sale of the Mt. Laurel Project, together with all supporting documents related thereto (see Receivables Loan Agreement at § 17.19; Inventory Loan Agreement at § 12.17).

20.     An Event of Default under the Receivables Loan Agreement or the Inventory Loan Agreement constitutes an Event of Default under the other such agreement and under each of the Promissory Notes.  See Receivables Loan Agreement at §22.1(b); Inventory Loan Agreement at §16.1(b); Promissory Notes at §§1 & 6.

### The Forbearance Agreement

21.     Plaintiff, Defendant and Guarantor entered into (a) that certain Forbearance Agreement, dated as of August 2, 2011, and (b) that certain First Amendment to Forbearance Agreement (the "First Amendment") as of September 22, 2011 (collectively, the "Forbearance Agreement").  A true and correct copy of the Forbearance Agreement, including the First Amendment, is attached hereto as Exhibit "H" and incorporated herein by reference.

22.     Pursuant to the Forbearance Agreement, among other things:

(a)     Defendant acknowledged and agreed, among other things, that defaults and Events of Default had occurred under the TFC Financing Documents, that the Indebtedness had been accelerated and is due and owing in full, and the Indebtedness is not subject to reduction, disallowance, impairment or subordination;

8

(b)        Defendant acknowledged and agreed that as of August 1, 2011, the outstanding principal amount of Indebtedness, together with accrued interest, was not less than (a) $3,339,253.93 for the Loans under the Inventory Loan Agreement, (b) $28,105,603.42 for Loans under Tranche A of the Receivables Loan Agreement, and (c) $1,594,677.65 for Loans under Tranche B of the Receivables Loan Agreement, in each case exclusive of costs, fees and expenses, including fees and expenses of counsel and advisors for the Plaintiff;

(c)        Plaintiff agreed to forbear from exercising certain rights and remedies from the effective date of the Forbearance Agreement until the earlier to occur of a Forbearance Termination Event (as defined in the Forbearance Agreement) and October 15, 2011 (such period being the "Forbearance Period");

(d)        The Parties agreed that the outstanding principal balance of Loans under Tranche B under the Receivables Loan Agreement as of July 31, 2011, together will all interest accrued thereon, would be transferred to and become Loans and indebtedness under Tranche A under the Receivables Loan Agreement;

(e)        Plaintiff agreed to make certain additional Advances under Tranche B of the Receivables Loan Agreement ("Tranche B Advances"), subject to the terms and conditions set forth in the Forbearance Agreement and the TFC Financing Documents (as modified by the Forbearance Agreement);

(f)        Plaintiff agreed to make certain additional Advances under the Inventory Loan Agreement (the "Additional Inventory Advances") as follows: (i) upon the Effective Date under the Forbearance Agreement, the sum of One Hundred Fifty Thousand Dollars ($150,000.00), which sum the Defendant was required to deposit into the Maintenance Fee Accounts to replenish such Maintenance Fee Accounts for funds withdrawn and paid to

Defendant's counsel, Fox Rothschild LLP, as a retainer for services (the "Replenishment Advance"); (ii) upon approval of the Class Action Settlement and completion of the sale of certain consumer loans pledged to Plaintiff as part of the TFC Collateral, up to the sum of Three Hundred Forty-Five Thousand Dollars ($345,000.00) of the settlement amount payable to the Class Action plaintiffs (the "Settlement Replenishment Advance"); (iii) subject to certain terms and conditions, a sum equal to fees for services provided by a financial advisor for the Defendant acceptable to Plaintiff (the "Financial Advisor") (the "FA Advance"); and (iv) a sum sufficient to pay fees and expenses of the Plaintiff related to the Loans and negotiation and execution of the Forbearance Agreement and monitoring of the TFC Collateral, the Resort Complex, and Defendant's businesses, including, without limitation, Plaintiff's due diligence fees, attorneys' fees, professional advisors' fees, and consultants' fees (the "Expense Advance").

23.     Pursuant to the Forbearance Agreement, by no later than September 30, 2011 ("Term Sheet Deadline"), Defendant was required to have received a binding term sheet or binding commitment for a loan to refinance the Indebtedness or for an equity investment in the Defendant (each, a "Term Sheet"), executed by a potential financing source or equity investor and by Defendant and all other parties thereto.  Within twenty-four hours of receipt of a Term Sheet, Defendant was required to deliver to the Plaintiff a copy of such Term Sheet.  See Forbearance Agreement at § 5.b.; First Amendment at § 1.a.

24.     Pursuant to the Forbearance Agreement and under the TFC Financing Documents, Plaintiff made the following Advances on and after August 1, 2011:

(a)     On August 11, 2011, the Replenishment Advance in the amount of $150,000.00;

(b)        On September 29, 2011, following the Philadelphia Court's entry of an order on September 26, 2011, approving the Class Action Settlement, the Settlement Replenishment Advance in the amount of $345,000.00;

(c)        On August 11 and September 29, 2011, Expense Advances in the amounts of $103,094.61 and $393,339.41, respectively;

(d)        On September 8 and October 14, 2011, FA Advances in the amounts of $31,571.57 and $38,162.23, respectively; and

(e)        Between August 1, 2011 and October 14, 2011, Tranche B Advances in the aggregate amount of $1,331,645.40.

25.    Pursuant to the Forbearance Agreement, Defendant acknowledged that the "Tranche B Incentive Fee" under the Receivables Loan Agreement in the amount of $140,000, was fully earned.  Forbearance Agreement at § 14.

26.    On September 20, 2011, as contemplated by the Forbearance Agreement, Plaintiff, as secured party, exercised its rights and remedies under the TFC Financing Documents and Article 9 of the Uniform Commercial Code as adopted by the Commonwealth of Pennsylvania (the "UCC") and sold certain consumer promissory notes pledged as security under Tranche A of the Receivables Loan (the "Tranche A Loans") at public auction sale (the "UCC Sale").

27.    Plaintiff was the successful bidder at the UCC Sale with a credit bid of $27,000,000, and, on September 20, 2011, Plaintiff closed on the sale of the Tranche A Loans under the UCC.

28.    Plaintiff incurred reasonable costs and expenses related to the UCC Sale in the aggregate amount of $174,158.96.

29.     Effective September 20, 2011, Plaintiff credited Tranche A of the Receivables Loan Indebtedness in the amount of net sale proceeds from the UCC Sale, $26,825,841.04.

30.     Further, pursuant to the Forbearance Agreement, subject to certain conditions, Plaintiff agreed (the "Tranche A Deficiency Agreement") to release any deficiency under Tranche A of the Receivables Loan Agreement remaining after completion of all Timeshare Loan Sales (as defined in the Forbearance Agreement) (the "Tranche A Deficiency"), such release to be effective two years and one day after completion of the last Timeshare Loan Sale. Conditions to release of the Tranche A Deficiency include, among other things, that an action is not commenced against Plaintiff or certain related parties within two years and one day of completion of the last Timeshare Loan Sale.

31.     Honoring the Tranche A Deficiency Agreement and because, to the best of Plaintiff's knowledge as of the time of filing of the instant Complaint, no events or occurrences exist that would nullify Plaintiff's agreement to release the Tranche A Deficiency, Plaintiff does not include herein or seek at this time judgment on the Indebtedness under the Tranche A of the Receivables Loan Agreement remaining after application of the net proceeds of the UCC Sale, but reserves its right in the future to seek judgment and otherwise enforce its rights related to such Indebtedness.

32.     Defendant did not receive a Term Sheet by the Term Sheet Deadline and has not, as of the date of filing of the instant Complaint, delivered a Term Sheet to Plaintiff.

33.     On October 6, 2011, TD Bank issued a notice to Defendant that additional defaults and events of default (called "Termination Events") had occurred under Defendant's forbearance agreement with TD Bank (the "TD Bank Forbearance Agreement") and TD Bank's

obligation to forbear had terminated.  See TD Bank October 6, 2011 letter to Defendant, a true and correct copy of which is attached hereto as Exhibit "I".

34.     A default or event of default under the TD Bank Forbearance Agreement and termination of TD Bank's obligation to forbear are each a Forbearance Termination Event under the Forbearance Agreement.  See Forbearance Agreement at Attachment "A", definition of "Forbearance Termination Event", at items (xviii), (xix), (xxi).

35.     A Forbearance Termination Event has occurred under the Forbearance Agreement as a result of, among other things, Defendant's failure (a) to receive a Term Sheet by the Term Sheet Deadline; (b) to deliver a Term Sheet to Plaintiff; (c) occurrence of defaults or events of default under the TD Bank Forbearance Agreement (d) termination of TD Bank's obligation to forbear under the TD Bank Forbearance Agreement, and (e) TD Bank's having given notice of or stated its intention to terminate its forbearance obligation.  See Forbearance Agreement at § 5 and Attachment "A".

36.     Upon the occurrence of a Forbearance Termination Event or the passing of October 15, 2011, the Forbearance Period under the Forbearance Agreement terminated and any obligation of Plaintiff to forbear from commencing the instant action or taking other actions to enforce its rights and remedies ended.  See Forbearance Agreement at § 7.a.

37.     By letter dated October 2, 2011 ("Forbearance Termination Notice"), although not required to do so under the Forbearance Agreement, Plaintiff, among other things, notified Defendant that a Forbearance Termination Event had occurred.  A true and correct copy of the Forbearance Termination Notice is attached hereto as Exhibit "J" and incorporated herein by reference.

38.     Additional Events of Default have occurred under the TFC Financing Documents due to Defendant's failure to make the Monthly Tax Reserve Payment due on or before August 10, 2011 and failing to pay, in full, the Indebtedness upon acceleration.

39.     By letter dated October 17, 2011 (the "Payment Demand Letter"), Plaintiff again notified Defendant that Events of Default had occurred under each of the Inventory Loan Agreement and the Receivables Loan Agreement and the other TFC Financing Documents, and demanded payment in full of the Indebtedness.  A true and correct copy of the Payment Demand Letter is attached hereto as Exhibit "K" and incorporated herein by reference.

## Collateral Securing Repayment of the Indebtedness

40.     As security for repayment of the Indebtedness, Defendant has granted Plaintiff and Plaintiff holds security interests and liens in and upon all of the Defendant's assets, including all of Defendant's real and personal property (the "TFC Collateral").  See Receivables Loan Agreement at § 6.1; Inventory Loan Agreement at §6.1; Forbearance Agreement at § 3.g.

41.     Property pledged to secure repayment of the Indebtedness related to the Receivables Loan Agreement or Inventory Loan Agreement has also been pledged to secure repayment under the other agreement.  See Receivables Loan Agreement at §6.2; Inventory Loan Agreement at §6.2.

42.     To further evidence and perfect its liens in the personal property constituting part of the TFC Collateral, Plaintiff has filed with the Pennsylvania Secretary of State (the "PA SOS") Uniform Commercial Code Financing Statements (as amended and continued, the "UCC-1 Statements"), which UCC-1 Statements are recorded with the PA SOS at Document File Numbers set forth on Attachment 1, hereto.

43.    On or about May 2, 2011, among other documents, Defendant executed that certain Second Amended, Restated and Consolidated Open-End Mortgage and Security Agreement (the "Mortgage") granting Plaintiff, among other things, a mortgage lien in Defendant's real property constituting the Resort Complex (as more fully described in the Mortgage, the "Mortgaged Property") to secure repayment of the Indebtedness.  The Mortgage is recorded with the Office of the Recorder of Deeds for Carbon County, Pennsylvania (the "Recording Office") in Book 1907 at Page 736.  A true and correct copy of the Mortgage is attached hereto as Exhibit "L" and incorporated herein by reference.

44.    By the following earlier executed mortgage agreements, Defendant also granted Plaintiff mortgage liens in the Mortgaged Property pursuant to: (a) that certain Open-End Mortgage and Security Agreement executed by International Resorts Properties, Ltd. (predecessor-in-interest to Defendant) in favor of Litchfield Financial Corporation (predecessor-in-interest to Plaintiff) recorded in the Recording Office in Book 831 at Page 371; (b) that certain Open-End Mortgage and Security Agreement recorded in the Recording Office in Book 963 at Page 141; (c) that certain Open-End Mortgage and Security Agreement recorded in the Recording Office in Book 1084 at Page 566; and (d) that certain Amended, Restated and Consolidated Open-End Mortgage and Security Agreement recorded in the Recording Office in Book 1643 at Page 388, as amended by that certain First Amendment thereto, recorded in the Recording Office in Book 1829 at Page 927.

45.    To further evidence Plaintiff's rights and interests in certain of the Collateral, among other things, Plaintiff has filed in the Recording Office a Uniform Commercial Code Financing Statement, which Financing Statement is recorded at Book 1907 at Page 848, and a

true and correct copy of which is attached hereto as <u>Exhibit "M"</u> and incorporated herein by reference.

46.     On or about May 2, 2011, among other documents, Defendant executed that certain Amended and Restated Collateral Assignment of Property Rights (the "<u>Property Rights Assignment</u>") collaterally assigning to Plaintiff Defendant's rights and certain personal property related to the Mortgaged Property.  The Property Rights Assignment is recorded in the Recording Office in Book 1907 at Page 818.  A true and correct copy of the Property Rights Assignment is attached hereto as <u>Exhibit "N"</u> and incorporated herein by reference.

### <u>*Defendant's Consent to Entry of Judgment by Confession*</u>

47.     Pursuant to each of the Promissory Notes, Defendant has consented to entry of judgment by confession upon occurrence of an Event of Default (as defined in the Receivables Loan Agreement and/or Inventory Loan Agreement, respectively):

**16.     <u>CONFESSION OF JUDGMENT</u>.  BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR IN ANY OTHER JURISDICTION WHICH PERMITS THE ENTRY OF JUDGMENT BY CONFESSION, TO APPEAR FOR BORROWER AT ANY TIME AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT IN ANY ACTION BROUGHT AGAINST BORROWER ON THIS NOTE OR THE LOAN DOCUMENTS AT THE SUIT OF LENDER, WITH OR WITHOUT COMPLAINT OR DECLARATION FILED, WITHOUT STAY OF EXECUTION, AS OF ANY TERM OR TIME, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE UNPAID OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AND ALL OTHER SUMS TO BE PAID BY BORROWER TO OR ON BEHALF OF LENDER PURSUANT TO THE TERMS HEREOF OR OF THE LOAN DOCUMENTS AND ALL ARREARAGES OF INTEREST THEREON, TOGETHER WITH ALL COSTS AND OTHER EXPENSES AND AN ATTORNEYS' COLLECTION COMMISSION OF FIFTEEN PERCENT (15 %) OF THE AGGREGATE AMOUNT OF THE FOREGOING SUMS, BUT IN NO EVENT LESS THAN $5,000.00; AND FOR SO DOING THIS NOTE OR A COPY HEREOF VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT. THE AUTHORITY GRANTED HEREIN TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED**

**BY ANY EXERCISE THEREOF BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL THE AMOUNTS DUE HEREUNDER. BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS NOTE AND THAT IT KNOWINGLY WAIVES ITS RIGHT TO BE HEARD PRIOR TO THE ENTRY OF SUCH JUDGMENT AND UNDERSTANDS THAT, UPON SUCH ENTRY, SUCH JUDGMENT SHALL BECOME A LIEN ON ALL REAL PROPERTY OF BORROWER IN THE COUNTY WHERE SUCH JUDGMENT IS ENTERED AND THAT EXECUTION MAY IMMEDIATELY BE ISSUED ON THE JUDGMENT TO GARNISH, LEVY ON OR ATTACH ANY PERSONAL PROPERTY OF BORROWER.**

See Tranche A Note at § 16; Tranche B Note at § 16; Inventory Note at § 16.

48.    In addition to executing each of the Promissory Notes, among other things, consenting to entry of judgment by confession, on or about May 2, 2011, Defendant also executed two documents entitled "Explanation and Waiver of Rights Regarding Confession of Judgment", one related to the Tranche A Note and Tranche B Note, and a second related to the Inventory Note (collectively, the "Confession of Judgment Explanations and Waivers"), acknowledging the Defendant was authorizing entry of judgment by confession against Defendant and in favor of Plaintiff and the import of granting such authority.  True and correct copies of the Confession of Judgment Explanations and Waivers are attached hereto as Exhibit "O" and incorporated herein by reference.

49.    Pursuant to Forbearance Agreement dated as of August 2, 2011, Defendant has consented to entry of judgment by confession upon termination of the Forbearance Period:

**26.    CONFESSION OF JUDGMENT/WARRANT OF ATTORNEY. RECOGNIZING THAT THEY ARE WAIVING CERTAIN IMPORTANT RIGHTS, INCLUDING (WITHOUT LIMITATION) THE RIGHT TO PREJUDGMENT NOTICE AND HEARING, EACH OF BORROWER AND KALINS HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD, UPON TERMINATION OF THE FORBEARANCE PERIOD (INCLUDING, WITHOUT LIMITATION, EXPIRATION OF THE FORBEARANCE PERIOD) HEREUNDER OR AT ANY TIME THEREAFTER, TO APPEAR FOR AND CONFESS JUDGMENT**

17

**AGAINST SUCH PARTY FOR SUCH SUMS AS SHALL BE DUE UNDER THIS AGREEMENT, UNDER THE TFC FINANCING DOCUMENTS, THE KALINS GUARANTY AGREEMENT, AND/OR RELATED TO THE INDEBTEDNESS AND THE OBLIGATIONS (INCLUDING, WITHOUT LIMITATION, UNPAID PRINCIPAL, INTEREST PAST DUE AND TO BECOME DUE, LATE CHARGES, COSTS OF COLLECTION, ATTORNEYS' FEES AND COURT COSTS) INSTITUTED BY LENDER, IN EVERY CASE, WITH COSTS OF SUIT AND , WITH AN ATTORNEY'S COMMISSION OF FIVE PERCENT OF THE AMOUNT DUE (BUT NOT LESS THAN $10,000), AND WITHOUT STAY OF EXECUTION.  EACH OF BORROWER AND KALINS HEREBY WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION SAID VOLUNTARY CONDEMNATION AND AGREES THAT SAID REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; AND ALSO WAIVES AND RELEASES ALL RELIEF FROM ANY AND ALL APPRAISEMENT, STAY OR EXEMPTION LAWS OF ANY STATE, WHETHER SUCH LAWS ARE NOW IN FORCE OR HEREAFTER ENACTED.  EACH OF BORROWER AND KALINS ALSO HEREBY WAIVES ITS/HIS RIGHT TO OBJECT TO, AND HEREBY RELEASES ALL PROCEDURAL ERRORS IN ANY OF THE FORGOING PROCEEDINGS.  IF A COPY OF THIS AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL BE FILED IN ANY SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AGREEMENT AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER AND KALINS SHALL NOT BE EXHAUSTED BY (i) THE INITIAL EXERCISE THEREOF, AND THE AUTHORITY AND POWER GRANTED BY THIS PARAGRAPH MAY BE EXERCISED FROM TIME TO TIME, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR DESIRABLE, AND THIS AGREEMENT SHALL BE A SUFFICIENT WARRANT.**

See Forbearance Agreement at § 26.

50.     Pursuant to the First Amendment, Defendant has consented to entry of judgment

by confession upon termination of the Forbearance Period:

**8.     <u>CONFESSION OF JUDGMENT/WARRANT OF ATTORNEY</u>. RECOGNIZING THAT THEY ARE WAIVING CERTAIN IMPORTANT RIGHTS, INCLUDING (WITHOUT LIMITATION) THE RIGHT TO PREJUDGMENT NOTICE AND HEARING, EACH OF BORROWER AND KALINS HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD, UPON TERMINATION OF THE FORBEARANCE PERIOD (INCLUDING, WITHOUT LIMITATION, EXPIRATION OF THE FORBEARANCE PERIOD) OR AT ANY TIME THEREAFTER, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST**

18

**SUCH PARTY FOR SUCH SUMS AS SHALL BE DUE UNDER THIS AGREEMENT, THE FORBEARANCE AGREEMENT, THE TFC FINANCING DOCUMENTS, THE CREDIT AGREEMENT, THE KALINS GUARANTY AGREEMENT, AND/OR RELATED TO THE INDEBTEDNESS AND THE OBLIGATIONS (INCLUDING, WITHOUT LIMITATION, UNPAID PRINCIPAL, INTEREST PAST DUE AND TO BECOME DUE, LATE CHARGES, COSTS OF COLLECTION, ATTORNEYS' FEES AND COURT COSTS) IN ANY ACTION INSTITUTED BY LENDER, IN EVERY CASE, WITH COSTS OF SUIT AND , WITH AN ATTORNEY'S COMMISSION OF FIVE PERCENT OF THE AMOUNT DUE (BUT NOT LESS THAN $10,000), AND WITHOUT STAY OF EXECUTION.  EACH OF BORROWER AND KALINS HEREBY WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION SAID VOLUNTARY CONDEMNATION AND AGREES THAT SAID REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; AND ALSO WAIVES AND RELEASES ALL RELIEF FROM ANY AND ALL APPRAISEMENT, STAY OR EXEMPTION LAWS OF ANY STATE, WHETHER SUCH LAWS ARE NOW IN FORCE OR HEREAFTER ENACTED.  EACH OF BORROWER AND KALINS ALSO HEREBY WAIVES ITS/HIS RIGHT TO OBJECT TO, AND HEREBY RELEASES ALL PROCEDURAL ERRORS IN ANY OF THE FORGOING PROCEEDINGS.  IF A COPY OF THIS AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL BE FILED IN ANY SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AGREEMENT AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER AND KALINS SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF, AND THE AUTHORITY AND POWER GRANTED BY THIS PARAGRAPH MAY BE EXERCISED FROM TIME TO TIME, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR DESIRABLE, AND THIS AGREEMENT SHALL BE A SUFFICIENT WARRANT.**

See First Amendment at § 8.

51.     Each of the Events of Default, Defendant's failure to make the Monthly Tax Reserve Payment due August 10, 2011 and Defendant's failure to satisfy the Indebtedness constitutes an Event of Default under each of the Promissory Notes.

52.     The Forbearance Period under the Forbearance Agreement has terminated.

53.     The condition(s) precedent after which judgment by confession may be entered have occurred under each of (a) the Promissory Notes, (b) the Forbearance Agreement dated as of the August 2, 2011 and (c) the First Amendment.

54.     As of October 16, 2011, the aggregate sum of $6,103,682.29 was due and owing related to the Tranche B Loan and the Inventory Loan under the Tranche B Note, Inventory Note and other TFC Financing Documents and Forbearance Agreement, calculated as follows:

| | Receivables Loan Indebtedness (Tranche B) | Inventory Loan Indebtedness | | |
|---|---|---|---|---|
| | | | | |
| Agreed Indebtedness as of August 1, 2011 (after transfer of Tranche B Loan balance as of 7/31/11 to Tranche A) | $0.00 | $3,339,253.93 | | |
| *Plus* amounts advanced from August 1, 2011 through October 14, 2011 | $1,331,645.40 | Replenishment Advance | $150,000.00 | |
| | | Settlement Replenishment Advance | $345,000.00 | |
| | | Expense Advances | $496,434.02 | |
| | | FA Advances | $69,733.80 | |
| *Plus* interest at Non-Default rate through October 2, 2011 | $7,045.82 | $50,267.43 | | |

| | Receivables Loan Indebtedness (Tranche B) | Inventory Loan Indebtedness | |
|---|---|---|---|
| | | | |
| *Plus* interest at Default Rate from October 3, 2011 through October 16, 2011 | $5,511.75 | $19,133.26 | |
| *Plus* Tranche B Incentive Fee | $140,000.00 | | |
| *Less* Consumer Timeshare Loan Payments Received and Credited to Receivables Loan Indebtedness and VCL Payments related to Upgrades | ($38,916.79) | | |
| *Less* Interest Reduction Payments | $0.00 | ($81,344.65) | |
| *Less* Inventory Loan Principal Reduction Payments Arising from Timeshare Loan Sales | | ($64,161.77) | |
| Indebtedness as of October 16, 2011 | $1,445,286.18 | $4,324,316.02 | |
| Indebtedness as of October 16, 2011 (Tranche B and Inventory Loans) | | | $5,769,602.20 |

| | Receivables Loan Indebtedness (Tranche B) | Inventory Loan Indebtedness | |
|---|---|---|---|
| | | | |
| *Less* Tax Reserve Account Balance (as of October 16, 2011) | | | ($97,121.47) |
| *Plus* Costs of Collection, incl. Attorneys' Fees (as of October 16, 2011) | | | $140,550.02 |
| *Plus* Attorneys Commission of 5% of Amounts Due (per Confession of Judgment Provisions) | | | $290,651.54 |
| **TOTAL INDEBTEDNESS AS OF OCTOBER 16, 2011** | | | **$6,103,682.29** |

55.    Interest continues to accrue on the Indebtedness under the Tranche B Loan and Inventory Loan from and after October 16, 2011, at the default rate under the Credit Agreement, which is calculated on the first day of each month for such month, at 10.5% per annum in excess of the LIBOR Rate (identically defined in Section 1.1 of each of the Receivables Loan Agreement and the Inventory Loan Agreement) in effect as of such date, but in no event less than 11.5% per annum (the "Default Rate").  See Receivables Loan Agreement at §§3.1-3.2; Inventory Loan Agreement at §§ 3.1-3.2.

56.     The Default Rate as of the date of filing of the instant Complaint is eleven and one-half percent (11.5%) per annum, or $1,856.94 per day.

57.     Pursuant to the Credit Agreement, interest shall continue to accrue post-judgment until paid at the Default Rate.  See Receivables Loan Agreement at §3.2; Inventory Loan Agreement at § 3.2.

58.     Despite demand, Defendant has refused or otherwise failed to satisfy the Indebtedness under the Tranche B Note, Inventory Note, Receivables Loan Agreement, Inventory Loan Agreement, other TFC Financing Documents and Forbearance Agreement.

59.     Judgment is hereby demanded against the Defendant as authorized by the confession of judgment clauses in each of the Tranche B Note, Inventory Note, the Forbearance Agreement dated as of August 2, 2011, and the First Amendment.

60.     Judgment is not being entered by confession against a natural person in connection with a consumer credit transaction.

61.     Plaintiff has not assigned any of its interests in the Tranche B Note, Inventory Note, Forbearance Agreement or other TFC Financing Documents.

62.     No judgment has been entered on the Tranche B Note, Inventory Note or the Forbearance Agreement in any jurisdiction.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant, as authorized by the Confession of Judgment clauses in the Tranche B Note, Inventory Note, Forbearance Agreement dated as of August 2, 2011 and the First Amendment, each executed by and on behalf of Defendant, in the amount of $6,103,682.29, plus such other amounts and reasonable costs, including attorneys' fees, related to the Tranche B Loan and Inventory Loan as may become due under the TFC Financing Documents and Forbearance Agreement, plus interest

from and after October 16, 2011 at the Default Rate of 11.5% per annum or $1,856.94 per day,

through the date of judgment and until the judgment is satisfied in full.

Dated: October 20, 2011

Andrew C. Kassner, Esq.
Pa. Attorney I.D. No. 43567
Andrew J. Flame, Esq.
Pa. Attorney I.D. No. 69673
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
(215) 988-2700

Attorneys for Plaintiff,
Textron Financial Corporation

# Table of Contents for
# Attachment and Exhibits

| | | Description |
|---|---|---|
| | | |
| **Attachment** | | |
| 1 | | List of UCC-1 Statements filed with PA Secretary of State |
| | | |
| **Exhibit** | | |
| | | |
| A | | Receivables Loan Agreement (as of May 2, 2011) |
| B | | Inventory Loan Agreement (as of May 2, 2011) |
| C | | Tranche A Note (as of May 2, 2011) |
| D | | Tranche B Note (as of May 2, 2011) |
| E | | Inventory Note (as of May 2, 2011) |
| F | | Class Action Order (entered April 29, 2011) |
| G | | Default Notice (May 16, 2011) |
| H | | Forbearance Agreement, dated as of August 2, 2011 (including First Amendment, dated September 22, 2011) |
| I | | TD Bank Notice to Defendant (October 6, 2011) |
| J | | Forbearance Termination Notice (October 2, 2011) |
| K | | Payment Demand Letter (October 17, 2011) |
| L | | Mortgage (May 2, 2011) |
| M | | Financing Statement (Recorded in Carbon County, Book 1907 at Page 848) |
| N | | Property Rights Assignment (as of May 2, 2011) |
| O | | Confession of Judgment Explanations and Waivers (as of May 2, 2011) |
| | | |
| | | |
| | | |
| | | |

# **Attachment 1**

[List of UCC-1 Statements]

UCC Document File No.
34360399
34360403
36420055
36471180
37001359
2007041206657
2007051600643
2007112001356
2007112001368
2008010702274
2011051604525
2011051604537
2011051604549
2011080902027