IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TEXTRON FINANCIAL CORPORATION, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | NO. 3:11-CV-1957 |
| v. | ) ) | (CAPUTO, J.) |
| VACATION CHARTERS, LTD., | ) ) | |
| Defendant. | ) | |

## ORDER

AND, NOW, this ___9th___ day of November, 2011, upon consideration of Plaintiff's Emergency Motion for the Appointment of Receiver (the "Motion"), the Brief in support thereof, and any responses thereto, it is hereby ORDERED that:

1. ROPA Associates, LLC (the "Receiver") is hereby appointed as receiver to take possession of manage, operate and preserve all of Defendant's property, real, personal and mixed, now existing and after acquired (collectively, the "TFC Collateral"), including, without limitation, (a) the real property subject to Plaintiff's mortgage liens (which real property is more particularly described in the legal description attached to the Mortgage that is Exhibit "L" to the Complaint, which legal description is incorporated herein as if set forth at length) (the "Real Property"), (b) the TFC Collateral located at the resort, time share property, water park and

related facilities at, on and related to the Real Property in Lake Harmony, Pennsylvania, which is commonly known as the "Split Rock Resort" (the "Resort Complex"), and (c) all structures, buildings and improvements located or placed on the Real Property (the "Improvements") and all furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Defendant and located on, attached to or used in or about the Improvements and Real Property. For purposes of this Order, the TFC Collateral and the Resort Complex do not include the Split Rock Parcel as defined in the Motion, but does include, among other personal property, the personal property located on or used in connection with the Split Rock Parcel.

2. The Receiver shall immediately enter upon, receive and take complete possession of all the TFC Collateral and the rents, revenues, income and profits generated by, from or at the Real Property, Resort Complex and other TFC Collateral.

3. The Defendant and its principals, members, partners, stockholders, officers, directors, representatives, manager(s), servants, contractors, agents and employees are hereby (a) ordered to deliver, or to cause to be delivered, immediately to the Receiver all of Defendant's property and effects in any way pertaining or relating to the Resort Complex and other TFC Collateral, including but not limited to operation and management of the Resort Complex as the Split Rock Resort, Westwood at Split Rock, Galleria at Split Rock, Willowbrook Resort at Lake Harmony and the Mt. Laurel Resort and Spa, or otherwise, and including the indoor water park commonly known as the "H20ooohh Indoor Family Waterpark" and all other amenities and facilities related to the Resort Complex, together with all approvals, operation, construction, maintenance, and rentals, including, without limitation, all governmental approvals (including but not limited to all permits, licenses, and liquor license) all, surveys, plans, drawings, specifications, engineering reports, environmental reports, construction contracts and documents,

work reports, advertising materials, forms, deposits, deposit account records, operating account records, other banking or financial records, contracts of sale and/or options to purchase, sales lists, service contracts, warranties, leases, lease agreements, security deposits, rent rolls and rental lists, note receivable payment and balance records, records of maintenance fees paid and payable related to deeded and licensed timeshare interests at the Resort Complex, and all other miscellaneous contracts, documents and instruments relating in any way to the TFC Collateral or Resort Complex, and (b) are restrained until further Order of this Court from taking any action to interfere with the Receiver in discharging its duties hereby, or with any of the property to be delivered to the Receiver pursuant to this Order.

4. Defendant and its principals, members, partners, stockholders, officers, directors, representatives, manager(s), servants, contractors, agents and employees are ordered to surrender and deliver immediately to the Receiver all keys or combinations to locks to open or gain access to all parts of the Real Property, Resort Complex and other TFC Collateral and all cash or cash equivalents wherever located, including cash or cash equivalents held by any banks or financial institutions, arising from the operation of or income from the Real Property, Resort Complex or other TFC Collateral, including, without limitation, all payments made under any contracts or leases including, but not limited to, any and all maintenance fees, security deposits and any deposits of existing or potential tenants, timeshare purchasers, timeshare owners, customers and guests.

5. Defendant and its principals, members, partners, stockholders, officers, directors, representatives, manager(s), servants, contractors, agents and employees are further ordered to surrender and deliver or make available immediately to the Receiver originals or true and correct copies of all certificates of insurance and policies of insurance covering the Real Property, Resort

Complex or other TFC Collateral, including without limitation, policies that provide hazard and/or liability coverage, and shall not perform any act which will limit or decrease the existing coverage. The Receiver is empowered to immediately notify all insurers to name the Receiver (as the court-appointed receiver for Defendant) as loss payee on any insurance policy covering the Real Property, Resort Complex or other TFC Collateral, to collect any payments on losses covered by such insurance policies, and, with the consent of Plaintiff, to restore or repair the Real Property, Resort Complex or other TFC Collateral in response to any such loss. In the event that insurance coverage is not in place, Receiver shall have the authority to obtain property and casualty, general liability, liquor liability, worker's compensation, and umbrella insurance policies in amounts and with premiums acceptable to Plaintiff or approved by the Court.

      6.     The Receiver is empowered to continue the operations of, development and maintenance at the Real Property, Resort Complex and other TFC Collateral as set forth herein including, if required, the execution of new leases and contracts, the extension, renegotiation, modification or amendment of existing leases and contracts and exercising all powers necessary to facilitate the operation of the Real Property, Resort Complex, other TFC Collateral and Resort Business, including but not limited to negotiation and execution of franchise and related agreements for operation of the Real Property, Resort Complex, other TFC Collateral and Resort Business as a nationally-recognized franchise. "Resort Business" shall mean all business activities at or related to the Real Property, Resort Complex or other TFC Collateral, including, without limitation, operation, management and maintenance of (i) the timeshare properties commonly known as Westwood at Split Rock, Galleria at Split Rock, Willowbrook Resort at Lake Harmony and the Mt. Laurel Resort and Spa, including daily, weekly or other rental of unsold timeshare units and intervals or use of such units for hotel operations, (ii) the indoor water

park commonly known as the "H20ooohh Indoor Family Waterpark", (iii) athletic facilities, including, without limitation, the existing 18 hole miniature golf course, indoor and outdoor pools, swimming lagoon, tennis courts, athletic fields, fitness center, massage center and steam rooms, 8 lane bowling alley, and lake/lagoon, (iv) entertainment facilities, including, without limitation, the existing movie theater, gift shop, video rental center, and video arcade, and meeting and function facilities and exhibit space, and (v) dining facilities including, without limitation, the existing restaurants, pizza parlor and snack bars.

7.  The Receiver shall enter, possess, operate, manage and control the Real Property, Resort Complex and other TFC Collateral and shall have the power to conduct, either personally or through its employees, servants, and agents, the business thereof, namely, the operation of the Resort Complex and other TFC Collateral, and the leasing and/or renting of facilities therein. In the discharge of its duties hereunder, the Receiver is authorized to employ such firms and persons as are deemed necessary to assist the Receiver in the performance of its duties hereunder including, but not limited to, attorneys, accountants, managing agents, maintenance personnel, security personnel, leasing agents, broker or management firms, and investment banking firms and to pay such individuals and companies reasonable compensation for their assistance in amounts and at intervals approved by the Court.

8.  The Receiver is empowered, in the exercise of its business judgment, to terminate, amend, pledge and/or assign any and all leases and contracts Defendant may have with any tenants, customers, vendors, lessees, lessors or with any managers, brokers or other agents related to the Real Property, Resort Complex, other TFC Collateral or the Resort Business, including, without limitation, any agreements with W. Jack Kalins, Inc., provided, however, in the event the Receiver determines to terminate a contract or lease that would result in a breach thereof by

Defendant, the Receiver shall provide written notice of such intention to Plaintiff, Defendant and TD Bank not less than three (3) business days prior to taking such action.

9. Defendant and its principals, members, partners, stockholders, officers, directors, representatives, manager(s), servants, contractors, agents and employees are directed to remit to the Receiver any and all payments, rents, revenues, income and profits paid to Defendant and its principals, members, partners, stockholders, officers, directors, representatives, manager(s), servants, contractors, agents and employees or to affiliates of Defendant on or after the date of this Order and any deposits in Defendant's possession and control received or collected on or after the date of this Order, to the extent related to or arising from the Real Property, Resort Complex, other TFC Collateral or the Resort Business, except to the extent such payments are for wages and benefits in connection with continued employment by the Defendant or Receiver.

10. The Receiver shall collect and receive all payments, revenues, rents, income and profits arising from the Real Property, Resort Complex, other TFC Collateral, and Resort Business and deposit same as set forth in paragraph 13 hereof, provided, however, that nothing in this Order shall change or modify Plaintiff's rights under the TFC Financing Documents (as defined in the Motion) or otherwise, to collect any payments, revenues, rents, income or profits. Nothing in this Order shall alter or modify the rights and obligations of the parties to that certain Intercreditor Agreement by and among Plaintiff, Litchfield Financial Corporation, Defendant, and TD BankNorth, N.A. dated as of June 14, 2007 (the "Intercreditor Agreement").

11. The Receiver is authorized and empowered to use the funds derived from the Real Property, Resort Complex, other TFC Collateral and Resort Business to pay, in cash or with credit, the following expenses incurred in connection with its management of the Real Property,

Resort Complex, other TFC Collateral and Resort Business at its discretion without further Order of this Court:

(a) All current and actual operating expenses incurred in connection with operating the Real Property, Resort Complex, other TFC Collateral and Resort Business and in the accomplishment of the powers herein granted to the extent consistent with 13-week rolling budgets approved by Plaintiff and TD Bank (the "Budgets"), which Budgets shall be delivered to the Plaintiff, TD Bank, and Defendant on or before the first day of each calendar month. Operating expenses shall include, without limitation, the costs of electricity, sewage, water, and garbage collection; charges by other utilities; needed maintenance, upkeep and repair; security; site staff; the Receiver's reasonable out-of-pocket expenses, including but not limited to travel expenses, and any other items of expense or costs necessary to operate the Real Property, Resort Complex, other TFC Collateral and Resort Business.

(b) Payment of taxes to ensure the continued operation of the Resort Complex and Resort Business and to protect the liens of the Plaintiff in the Real Property, Resort Complex and other TFC Collateral and TD Bank with regard to collateral pledged to TD Bank, as set forth in the Intercreditor Agreement (the "TD Bank Collateral").

(c) Payment of insurance premiums for hazard, casualty and liability insurance coverage to keep the Real Property, Resort Complex, other TFC Collateral, Resort Business, the Receiver and the Plaintiff insured.

12. The Receiver is empowered to institute actions against tenants located at the Resort Complex, customers of the Defendant, owners of deeded and licensed timeshare interests, and others for the recovery of rent, income, maintenance fees, payments and profit relating to the Real Property, Resort Complex, other TFC Collateral and Resort Business and other sums owed

to the Defendant and to advise prospective tenants who have signed leases and customers that have signed contracts or agreements of sale related to timeshare units or intervals, but who have not closed on such leases, contracts or agreements of sale and who have tendered deposits to Defendant with respect to such leases, contracts or timeshare interests, that neither the Receiver nor the Plaintiff will refund such deposits.

13. The Receiver shall open and maintain deposit accounts at one or more federally insured banks or financial institutions and advise Plaintiff of the identity of the such bank(s) and financial institution(s) and account numbers (in which accounts Plaintiff and TD Bank shall continue to hold valid and perfected security interests to the extent each held such interests in Defendant's deposit accounts prior to the entry of this Order) for the purpose of depositing therein all proceeds and income collected from the Real Property, Resort Complex, other TFC Collateral and Resort Business and to withdraw such funds as are necessary to pay for the costs incurred in the operation and maintenance of the Real Property, Resort Complex, other TFC Collateral and Resort Business and TD Bank Collateral in accordance with this Order in the amount necessary to pay the aforesaid costs of operation and maintenance, including payment of the Receiver Fee, including reimbursement of Receiver's expenses in accordance with this Order and less a reserve for operating expenses of the receivership estate, working capital, capital improvements, and reserving for payment of real estate taxes, each as set forth in the Budget approved by Plaintiff and TD Bank, so the Receiver has adequate funds in the Receiver's deposit accounts to comply with the terms of this Order. If any financial institution at which the Receiver has deposited funds ceases to be a federally insured bank or financial institution, the Receiver shall open and maintain deposit accounts at another federally insured bank or financial institution and notify Plaintiff of the identity of such accounts in accordance with this paragraph.

14. The Receiver shall be entitled to compensation (collectively, the "Receiver Fee") as follows: (a) monthly compensation for its services in the amount of (i) two percent (2%) of the gross revenues (exclusive of maintenance fees and purchase price/promissory note payments related to timeshare interests) generated by the Resort Complex (the "Monthly Management Fee"), plus (ii) $1,000 for accounting services, and (b) reasonable and necessary out of pocket expenses incurred by the Receiver, to the extent provided in the Budget or otherwise approved by Plaintiff in writing, and (c) upon the Court's dissolving of the receivership if the Receiver is then serving as receiver for the TFC Collateral and Resort Complex, and after filing of final reports and completion of all services as receiver, a one time fee in an amount equal to the average Monthly Management Fee earned by the Receiver for the six month period preceding dissolution of the Receivership. The Receiver Fee shall be payable in arrears and shall be paid from revenues generated by the TFC Collateral, Resort Complex and Resort Business. Notwithstanding the foregoing, should revenues generated by the TFC Collateral not be sufficient to pay the Receiver's Fee, Plaintiff shall advance funds to pay Receiver's Fee.

15. The Receiver is empowered to operate and serve alcoholic beverages under any existing liquor license related to the Real Property, Resort Complex and/or Resort Business and to promptly make application, if the Receiver deems such application necessary or preferable, to the Commonwealth of Pennsylvania Liquor Control Board to obtain an amended or new liquor license to sell alcoholic beverages as an incident to the operation of the Real Property, Resort Complex and/or the Resort Business.

16. The Receiver shall be at liberty to apply to this Court at any time during the pending action for further directions and guidance to assist the Receiver in its managerial role.

17. Neither Plaintiff, TD Bank, nor the Receiver shall be liable for any obligation of Defendant relating to the Real Property, Resort Complex, other TFC Collateral or Resort Business that arose prior to this Order, including, without limitation, any contingent or unliquidated obligations, nor shall the Plaintiff, TD Bank, or the Receiver be obligated to advance any funds to pay any expense of maintenance or other liability of the Real Property, Resort Complex, other TFC Collateral or Resort Business. Notwithstanding the foregoing, should the Plaintiff advance funds to pay the Receiver Fee and advance funds to maintain or preserve the Real Property, Resort Complex, other TFC Collateral and/or the Resort Business, the repayment of all such funds advanced shall be secured by the Mortgage and other security agreements and assets of the Defendant, including, without limitation, the Real Property, Resort Complex, other TFC Collateral and Resort Business, and shall be added to any judgment entered in this action and shall be payable thereunder. Plaintiff shall advance funds only to the extent provided by Budgets; <u>provided, however</u>, in the event Plaintiff determines in its sole discretion not to provide further advances, Plaintiff shall provide notice to the Receiver, Defendant and TD Bank at least thirty (30) days prior to the effective date of termination of advances.

18. The Receiver shall have no liability to any party for any claims, actions or causes of action arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver. This protection of the Receiver from liability shall include, but not be limited to, any liability from the performance of services rendered by third parties on behalf of Defendant, and any liability to which Defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership and use of the Real Property, Resort Complex and other TFC Collateral or TD Bank Collateral, and operation of the Resort Business or Defendant's other businesses.

19. Following the Receiver's appointment, the Receiver shall not be deemed in any way to be an owner of the Real Property, Resort Complex, other TFC Collateral or Resort Business. If the Receiver shall have acted in accordance with the terms and conditions of this Order and applicable law, the Receiver shall have no liability as to any claim, actions or causes of action of any kind, including, without limitation, any claims under any federal or state environmental laws; provided however, the Receiver shall be liable for: the Receiver's own gross negligence, reckless, intentional or willful misconduct; or actions taken by the Receiver that are not authorized by the terms of this Order.

20. If the Receiver takes action(s) that requires the expenditure of funds, unless consented to by the Plaintiff and TD Bank in writing (including but not limited to an expenditure contained in a budget approved by the Plaintiff and TD Bank in writing) or in the event of an emergency, if necessary to preserve and protect the Real Property, Resort Complex or other TFC Collateral or TD Bank Collateral and other assets of the receivership estate from imminent damage, such actions if undertaken by the Receiver, shall be at the Receiver's own expense.

21. The Receiver shall provide the Plaintiff, Defendant and TD Bank, on a monthly basis, with written reports setting forth, among other things, the gross income from the operation of the Real Property, Resort Complex, other TFC Collateral and Resort Business and the expenditures made by the Receiver in connection with its duties and obligations hereunder. The Receiver shall respond in a timely fashion to requests by the Plaintiff, Defendant and TD Bank for information regarding the operation of the Real Property, Resort Complex, other TFC Collateral and Resort Business.

22. The Receiver shall have no rights other than as expressly set forth in this Order and shall have no right to commence any action against the Plaintiff or TD Bank, or their

respective officers, directors, shareholders, employees, attorneys, partners or affiliates, except to enforce the terms and conditions of this Order.

23. If the Receiver receives notice that the Defendant has filed a petition for relief commencing a case (a "Bankruptcy Case") under Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), and property that is the subject of this order (for purposes of this paragraph, the "Bankruptcy Estate Property") is property of the Defendant's bankruptcy estate, the Receiver shall have the following duties:

    (a) The Receiver shall promptly contact Plaintiff and TD Bank and inquire whether Plaintiff and TD Bank jointly or separately intend to file in the Bankruptcy Case a motion seeking entry of an order excusing the Receiver from any obligation to turn over the Bankruptcy Estate Property to the bankruptcy trustee pursuant to section 543 of the Bankruptcy Code (a "543 Motion");

    (b) If neither Plaintiff nor TD Bank states that it intends to file a 543 Motion, the Receiver shall immediately turn over the Bankruptcy Estate Property to either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor-in-possession, and otherwise comply with section 543 of the Bankruptcy Code; and

    (c) If Plaintiff or TD Bank states that it intends to file a 543 Motion, the Receiver may remain in possession and preserve the Bankruptcy Estate Property pending the ruling on the 543 Motion. The Receiver's authority with respect to the Bankruptcy Estate Property shall be limited as follows absent entry of an Order in the Bankruptcy Case excusing the Receiver from the provisions of section 543 of the Bankruptcy Code:

        (i) The Receiver may continue to collect Rents and Profits and other income;

    (ii)  The Receiver may make only those disbursements necessary to preserve and protect the Bankruptcy Estate Property;

    (iii)  The Receiver shall not execute any new leases or other long-term contracts for the Bankruptcy Estate Property; and

    (iv)  The Receiver shall do nothing with regard to the Bankruptcy Estate Property that would effect a material change in the circumstances of the Bankruptcy Estate Property; and

  (d)  If Plaintiff or TD Bank does not file a 543 Motion within ten (10) court days after its receipt of notice of commencement of the Bankruptcy Case, the Receiver shall promptly turn over the Bankruptcy Estate Property to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor-in-possession, and otherwise comply with Bankruptcy Code section 543; and

  (e)  The Receiver may petition this Court or the Bankruptcy Court, as applicable, to retain legal counsel to assist the Receiver with issues arising out of the Bankruptcy Case that effect the receivership or the Receiver's ability to perform its duties.

  24.  This Order shall remain in effect until the earliest of (i) a conveyance of Defendant's interest in all of the Real Property, Resort Complex, and other TFC Collateral following a judicial sale, including pursuant to 28 U.S.C. § 2001, *et seq.*, (ii) notification from the Plaintiff and TD Bank to the Court that the issues between the Plaintiff and Defendant have been amicably resolved and that the services of a Receiver are no longer required, or (iii) the Receiver or its successor, if any, is otherwise relieved of its duties by further order of the Court, unless further extended by order of the Court after notice to the Plaintiff and Defendant. On motion of a party to this action after a further hearing on notice to the Receiver, Plaintiff,

Defendant, and TD Bank, the powers and responsibilities of the Receiver may be expanded in the Court's discretion to include, among other things the institution of a process of and holding of a sale of the Real Property, Resort Complex, and other TFC Collateral pursuant to 28 U.S.C. § 2001.

25.  Within seven (7) days of the entry of this Order, the Receiver shall post a bond with the Court in the amount of $150,000.

26.  Notice of entry of this Order shall be served by the Receiver upon all parties to this action and all creditors of Defendant for whom Receiver is able to obtain addresses.

IT IS SO ORDERED.

_____  J.