IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STABILIS SPLIT ROCK JV, LLC, )
)
v. ) No. 3:11-CV-1957
)
VACATION CHARTERS, LTD., ) (CAPUTO, J.)
)
Defendant. )
)
)
)

## STIPULATED ORDER SUBSTITUTING RECEIVER AND AMENDING ORIGINAL RECEIVERSHIP ORDER

AND NOW this 3RD day of NOV., 2014, Plaintiff Stabilis Split Rock JV, LLC ("Plaintiff"), Defendant Vacation Charters, Ltd. ("Defendant"), and ROPA Associates, LLC (the "Original Receiver") hereby agree to amend that certain Order entered by this Court on November 9, 2011 [Dkt No. 24] (the "Original Receivership Order")[1] and further stipulate and agree as follows:

Background

A. On November 9, 2011 this Court entered the Original Receivership Order appointing the Original Receiver as receiver to take possession of manage, operate and preserve all of Defendant's property, real, personal and mixed, now existing and after acquired (collectively, the "Collateral").

B. On or about August 8, 2014, the Sheriff of Carbon County held a sale for certain of the real property owned by the Defendant at which Plaintiff was the successful purchaser.

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Original Receivership Order.

C.  Plaintiff also plans to schedule: (i) a sheriff and/or foreclosure sale of Defendant's remaining real property, and (ii) a public sale held in accordance with Article 9 of the Uniform Commercial Code ("Article 9 Sale"), pursuant to which it will sell substantially all of the remaining personal property assets owned by the Defendant.

D.  Because a significant portion of the Collateral managed by the Original Receiver has been or will be transferred to Plaintiff, the parties hereto have agreed to substitute the Original Receiver with the New Receiver pursuant to the terms of this Order.

IT IS HEREBY ORDERED BY THE COURT AND STIPULATED AND AGREED TO BY THE PARTIES THAT AS OF 12:01 EST AM ON NOVEMBER 1, 2014 (the "EFFECTIVE DATE"):

1.  Boutique Real Estate Advisors, LLC (the "New Receiver") shall be appointed as receiver in the place and stead of the Original Receiver to possess, manage, operate and preserve all Collateral that has not yet been foreclosed upon and/or sold pursuant to the Article 9 Sale, whether real or personal, and whether tangible or intangible, together with all properties or assets that were in the possession of, under the control of, or in the name of, the Original Receiver pursuant to the Original Receivership Order and all proceeds thereof (collectively, the "Remaining Assets"). On and after the Effective Date, the New Receiver shall have the benefit of all powers and protections, and shall have all of the duties as set forth in the Original Receivership Order, except as amended hereby.

2.  All references in the Original Receivership Order to the defined term "Receiver" are hereby amended to substitute the New Receiver for the Original Receiver.

3.  Except as explicitly amended by the terms of this Order, the Original Receivership Order is hereby reaffirmed in all respect and shall remain in full force and effect.

4.  On the Effective Date, and except as otherwise set forth herein, the Original Receiver shall deliver possession of the Remaining Assets in its possession and control to the

New Receiver (other than the retained funds and accounts receivable described in paragraph 7) and the New Receiver shall possess, manage, operate and preserve all Remaining Assets. On the Effective Date, the Original Receiver shall be relieved of any of its operational or possessory obligations arising from and/or related to the Remaining Assets.

5. The Original Receiver shall prepare and file its final report for the terms of its Receivership ("Final Report") within forty-five (45) days of the entry of this Order. Upon approval of the Final Report by the Court the Original Receiver shall be fully discharged from its duties as receiver.

6. Absent further order of Court, any bond issued in favor of Original Receiver shall be released upon approval of the Final Report. The Defendant and Plaintiff consent and agree that the New Receiver shall not have any obligation to post a replacement bond and any requirement that a bond be issued under applicable law is hereby waived.

7. Notwithstanding the language of Section 4 hereof, the Original Receiver shall be entitled to retain $800,000 in cash in order to satisfy those bills and expenses arising from the operation of the receivership estate through the Effective Date; provided, however, that the final fee calculated in the amount of $27,171.77 shall be held in escrow pending determination of the Final Report by the Court. To the extent the retained funds are not sufficient to satisfy the obligations owed by the Original Receiver for expenses, the Original Receiver may make a request to the New Receiver and Plaintiff for additional amounts to pay such shortfall. Upon the approval of the Plaintiff of the intended use of such amounts, New Receiver and/or Plaintiff shall transfer such amounts to the Original Receiver within five business days. Original Receiver agrees not to use any proceeds for the purpose of paying anything other than as approved by the Plaintiff. To the extent there are any remaining funds or proceeds controlled by the Original

Receiver following approval of its Final Report, such amounts shall be turned over to and paid to the Plaintiff within five business days. To the extent the Plaintiff and the Original Receiver are unable to mutually agree to any payment of any bills fees or expenses as part of a shortfall request, this Court hereby retains jurisdiction to adjudicate such disputes.

8. If, at any time, the New Receiver determines it has cash proceeds in excess of its anticipated costs and expenses, it is authorized to pay such excess amounts to the Plaintiff without further order of Court, <u>provided, however</u>, that the New Receiver may not distribute to Plaintiff amounts in excess of the balance remaining on the judgment entered against Defendant in the above-captioned action.

9. The New Receiver, Plaintiff and Defendant agree to provide Original Receiver access to any books and records and the assistance of support personnel and new management as may be reasonably necessary for it to complete its Final Report. The Original Receiver agrees to provide and respond to any reasonable information request made by the Plaintiff or New Receiver for a period of one hundred twenty (120) days following the date of this Order.

10. Upon the Effective Date, Original Receiver shall terminate all employees. Plaintiff, or its designee or New Receiver agree to offer employment to at least 70% of the employees employed with the same wages and substantially similar benefits (including health benefits) and other terms and conditions of employment currently offered by the Original Receiver together with the assumption of any accrued benefits or compensation for such hired employees; <u>provided, however</u>, this Order is not intended nor shall it obligate the Plaintiff (or its designee), to maintain any employment with any employee. To the extent any employee is not rehired and Original Receiver is required to pay any amounts relating to accrued compensation

(including unused vacation or paid time off), then Plaintiff agrees to pay such amounts, and to offer, to the extent legally required, COBRA coverage.

11. The Original Receiver shall cooperate in the issuance or transfer of any existing liquor licenses to the Plaintiff (or its designee), including, without limitation, as permitted under applicable law. Such cooperation may include, without limitation: (i) entering into an interim Beverage Management Agreement in form and substance satisfactory to the Plaintiff and Original Receiver, which shall allow the Plaintiff to maintain and preserve interim operation (including the service of alcoholic beverages at the Resort), and (ii) maintaining the existing licenses in operation pending issuance of new licenses to Plaintiff and/or its designee, provided, however, that the Original Receiver shall not be obligated to assume any liability or incur any expense in connection with its obligations in this paragraph. Nothing contained herein shall limit Plaintiff's (or its designee's) right to file for and obtain one or more liquor licenses in its name (or the name of its designee) for use at the Resort.

12. Original Receiver shall cancel and terminate all insurance policies covering Original Receiver with respect to any of the Remaining Assets, so long as the cancellation of such policies will not jeopardize coverage of any existing claims (in which case Original Receiver, Plaintiff and New Receiver shall work together in good faith to substitute in the New Receiver or Plaintiff (or its nominee) to such insurance policies to ensure there are no gaps in coverage of existing claims). To the extent there are any refunds of premiums paid such amounts shall be transferred to the Plaintiff.

13. Plaintiff (or its nominee or New Receiver, as designated by Plaintiff in its sole discretion) shall be substituted for Original Receiver for all pending litigation involving the Original Receiver described on Exhibit A, so long as such substitution or dismissal does not

jeopardize any applicable insurance coverage. The Original Receiver and the New Receiver shall use commercially reasonable efforts to effectuate such substitution within thirty (30) days of the date of this Order or sooner if required by a particular case; <u>provided, however,</u> that to the extent the parties believe that such substitution or dismissal may jeopardize any applicable insurance coverage, then the parties will work in good faith to substitute the New Receiver in a timely manner that does not jeopardize such coverage. Original Receiver shall be entitled to such rights and protections provided in the Original Receivership Order and/or applicable law; <u>provided, however,</u> that nothing in this Order is intended to nor shall it constitute a waiver of any claims that may exist against the Original Receiver for any breach or violation of the Original Receivership Order or applicable law.

14. The New Receiver shall be deemed to be substituted in for all contracts and/or agreements entered into by and in the name the Original Receiver ("<u>Receiver's Contracts</u>") that have not been terminated as of the date of this Stipulation. The Original Receiver shall not be liable for any liabilities caused by the termination or assignment of the Receiver's Contracts; provided, however, that nothing in this Order is intended to nor shall it constitute a waiver of any claims that may exist against the Original Receiver for any breach or violation of the Original Receivership Order or applicable law. The Original Receiver shall indemnify the New Receiver for any breach or violation of the Receiver's Contracts prior to the Effective Date that constitute a breach of the Original Receivership Order or applicable law.

15. The Original Receiver shall cause any board member it appointed or had the right to appoint to resign from any board of directors (or similar governing body) and the Plaintiff or New Receiver shall have the right to replace such board members, including the board members of the board of directors of VILLAGE GREEN COOPERATION, WESTWOOD

CONDOMINIUM ASSOCIATION, INC., a Pennsylvania corporation and SUMMIT MANAGEMENT AND UTILITIES, INC., a Pennsylvania corporation.

16. Neither the New Receiver nor the Original Receiver shall have any obligation, and hereby agrees that it shall not contest, object or intervene in any foreclosure, sheriff sale, and/or sale held in accordance with article 9 of the Uniform Commercial Code, including, but not limited to, the Article 9 Sale, conducted by, or on behalf of, the Plaintiff.

17. The Plaintiff reserves all rights to challenge and/or contest the calculation and/or validity of any action taken, and/or fees or expenses paid or that may be due and owing to the Original Receiver or the New Receiver; provided, however, that Original Receiver may rely upon the Consent, as that term is used herein, of Plaintiff's predecessor-in-interest (the "Prior Lender") for actions taken, or fees or expenses paid, by the Original Receiver during Prior Lender's ownership of the interests in the above-captioned proceeding, except to the extent such actions or payments violated the Original Receivership Order or applicable law. For purposes of this subsection, "Consent" shall mean express written consent of the Prior Lender and/or any other conduct or actions by Prior Lender that are deemed by this Court to constitute consent. Notwithstanding anything to the contrary consent herein, the Receiver expressly preserves, and does not waive, its right to assert that actions were taken, and/or expenses paid, with Consent.

18. This Order is not intended to nor shall it benefit or be enforceable by any party other than the Original Receiver, the New Receiver, the Plaintiff and/or the Defendant.

STIPULATED AND AGREED TO:

PLAINTIFF:

STABILIS SPLIT ROCK JV, LLC

By: _____
Name: Joseph J. Tuso
Title: Authorized Signatory


ORIGINAL RECEIVER:

ROPA ASSOCIATES, LLC


By: _____
Name: _____
Title: _____


DEFENDANT/BORROWER:

VACATION CHARTERS, LTD.


By: _____
Name: _____
Title: _____


NEW RECEIVER

BOUTIQUE REAL ESTATE ADVISORS, LLC


By: _____
Name: _____
Title: _____

STIPULATED AND AGREED TO:

**PLAINTIFF:**

**STABILIS SPLIT ROCK JV, LLC**

By: _____
Name: _____
Title: _____

**ORIGINAL RECEIVER:**

**ROPA ASSOCIATES, LLC**

By: _____*Dennis P. Tatty*_____
Name: ___Dennis P. Tatty___
Title: ___Attorney___

**DEFENDANT/BORROWER:**

**VACATION CHARTERS, LTD.**

By: _____
Name: _____
Title: _____

**NEW RECEIVER**

**BOUTIQUE REAL ESTATE ADVISORS, LLC**

By: _____
Name: _____
Title: _____

STIPULATED AND AGREED TO:

**PLAINTIFF:**

**STABILIS SPLIT ROCK JV, LLC**

By: _____
Name: _____
Title: _____

**ORIGINAL RECEIVER:**

**ROPA ASSOCIATES, LLC**

By: _____
Name: _____
Title: _____

**DEFENDANT/BORROWER:**

**VACATION CHARTERS, LTD.**

By: _/s/_____
Name: _Joseph McAleer, ESQ_
Title: _Attorney for Vacation Charters, LTD._

**NEW RECEIVER**

**BOUTIQUE REAL ESTATE ADVISORS, LLC**

By: _____
Name: _____
Title: _____

STIPULATED AND AGREED TO:

**PLAINTIFF:**

**STABILIS SPLIT ROCK JV, LLC**

By: _____
Name: _____
Title: _____

**ORIGINAL RECEIVER:**

**ROPA ASSOCIATES, LLC**

By: _____
Name: _____
Title: _____

**DEFENDANT/BORROWER:**

**VACATION CHARTERS, LTD.**

By: _____
Name: _____
Title: _____

**NEW RECEIVER**

**BOUTIQUE REAL ESTATE ADVISORS, LLC**

By: /s/ Jay DiGiulio
Name: Jay DiGiulio
Title: President

SO ORDERED:

_____
CAPUTO, J.

EXHIBIT A

1. Alvena Snedeker vs. John F. Topito, III and Ropa Associates, LLC
   Court of Common Pleas, Philadelphia County, PA (civil)
   Docket # _____

2. Letter to Richard L. LeBlanc, Agent (office of the Attorney General, Harrisburg, PA) dated January 21, 2014, re: Split Rock Resort (BCP – 13-05-028628) from Harry L. Lay

3. Kim Renee Burke vs. Split Rock Resort & Golf Club, Split Rock Resort, Split Rock Resort & Casino, Split Rock Resort Casino & Waterpark, Split Rock Resort, LLC and Vacation Charters, Ltd.
   Court of Common Pleas, Carbon County, PA (civil)
   Docket # 14-1296

4. Diane Mussoline and Rocco L. Mussoline, III vs. Vacation Charters, LTD (d/b/a Split Rock Resort) (also d/b/a Split Rock Resort & Casinos); White Transit School Buses, Inc. and Ronald Hagenbaugh
   Court of Common Pleas of Luzerne County, PA (civil)
   Docket # 4533 of 2013

5. Golf Cart Services, Inc. vs. Vacation Charters, LTD d/b/a, Split Rock Resort and Split Rock Country Club, Inc.
   Court of Common Pleas of Adams County, PA (civil)
   Docket #12-S-629

6. DFC Associates, Inc., Kristel Marketing, Inc. vs. ROPA Associates, Inc.
   Court of Common Pleas, Carbon County, PA (civil)
   Docket #14-1651

7. Millman Surveyors v. ROPA Associates, Inc. (no actual litigation pending)